IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


CHARLES N. BROWN,                              06-CV-1238-BR

        Plaintiff,

                                 OPINION AND ORDER

v.

DR. CARNEVALE; PRISON HEALTH
SERVICES; DAVID NOWACK;
DR. JAY KRAVITZ; NURSE DOE;
WASHINGTON COUNTY; DEPUTY
RYAN POPE; DEPUTY RICHARD
LYONS; SGT. DIAMOND; BOB
THEISSEN; and WASHINGTON
COUNTY SHERIFF,

        Defendants.


CHARLES N. BROWN
# 4174405
Snake River Correctional Institution
777 Stanton
Ontario, OR 97914

        Plaintiff, *Pro se*


1 - OPINION AND ORDER

**MICHAEL T. STONE**
**JAMES M. DAIGLE**
Brisbee & Stockton, LLC
139 N.E. Lincoln Street
P.O. Box 567
Hillsboro, OR 97123
(503)648-6677

> Attorneys for Defendants Prison Health Services,
> Dr. Carnevale, David Nowack, and Nurse Jane Doe

**DAN R. OLSEN**
Washington County Counsel
**WILLIAM G. BLAIR**
Senior Assistant Washington County Counsel
155 N. First Avenue, Suite 340 - MS 34
Hillsboro, OR 97124-3072
(503) 846-8747

> Attorneys for Defendants Washington County, Washington
> County Sheriff, Dr. Jay Kravitz, Sgt. Diamond, Deputy
> Ryan Pope, and Deputy Richard Lyons

**BROWN, Judge.**

This matter comes before the Court on the Motion (#100) for Summary Judgment of Defendant Prison Health Services (PHS) and Plaintiff Charles N. Brown's Motion (#109) to Deny Defendant PHS's Motion for Summary Judgment. The Court **construes** Plaintiff's Motion as a Response to Defendant PHS's Motion for Summary Judgment.

For the reasons that follow, the Court **GRANTS** PHS's Motion for Summary Judgment.


## BACKGROUND

On October 31, 2004, Plaintiff was a detainee in the maximum

2 - OPINION AND ORDER

security pod (Pod 3) of the Washington County Jail.  On that
date, Deputies Ryan Pope and Richard Lyons were on duty in Pod 3.
At approximately 5:52 a.m., Matthew Gallagher, another inmate,
entered Plaintiff's cell and assaulted Plaintiff after
Plaintiff's cell door locked automatically.  After assaulting
Plaintiff, Gallagher used the intercom in Plaintiff's cell to
call Deputy Lyons and tell him that he had entered Plaintiff's
cell by mistake.  Deputy Lyons opened Plaintiff's cell door
automatically from the Pod 3 Command Center and ordered Gallagher
back to his own cell.  According to Plaintiff, he "buzzed" Deputy
Lyons after Gallagher left and informed Deputy Lyons that he was
injured.

     At 6:00 a.m., Deputy Lyons observed Plaintiff's injuries and
summoned medical staff and backup deputies.  Nurse Iris Nobel,
L.P.N., responded to the summons and examined Plaintiff.
According to Plaintiff, Nurse Nobel provided him with aspirin and
an icepack for his injuries.  A later examination revealed
Plaintiff had a broken cheek bone and facial contusions.

     On December 2, 2004, Plaintiff was examined at Tualatin
Community Hospital and diagnosed as having suffered a "two part
fracture of the right zygomatic arch."  On December 20, 2004,
Plaintiff submitted a Health Care Request in which he noted he
was having headaches and other physical symptoms associated with
his injuries.  PHS responded by putting Plaintiff on the list for

3 - OPINION AND ORDER

an appointment with a medical doctor at Oregon Health Sciences
University (OHSU).

On January 7, 2005, OHSU physician Geoffrey H. Buncke, M.D.,
examined Plaintiff and reported he had a "right zygomatic
fracture with pain in tempromandibular joint."  Dr. Buncke opined

> [n]one of the diagnoses that I have listed today
> in my review of [Plaintiff's] . . . face represent
> an urgent medical problem.  This does not need to
> be addressed in an urgent fashion. . . .  I
> recommend [Plaintiff] has a followup with our
> Maxillofacial specialist, Dr. Ozaki, at OHSU for
> evaluation of his right zygomatic fracture in more
> details.

Pl.'s Br. in Support of Mot. to Deny Def.'s Mot. for Summ. J.,
Ex. J.

On February 22, 2005, Reid Mueller, M.D., examined Plaintiff
at OHSU.  Dr. Mueller opined Plaintiff had a "zygomatic arch
fracture, possible impingement syndrome."  Dr. Mueller
recommended Plaintiff obtain a facial CT scan "so that we might
make some assessment about the likelihood of his impingement
syndrome."  Dr. Mueller noted he would make a plan for treatment
after Plaintiff obtained a CT scan.

On March 22, 2005, Plaintiff was examined by Dr. Meuller
again.  Dr. Mueller reported Plaintiff's CT scan showed a
"displaced comminuted right zygoma fracture with a significantly
depressed comminuted segment that is resulting in impingement
syndrome."  Dr. Mueller recommended Plaintiff undergo surgery to
address the fracture and impingement.  On April 1, 2005,

4 - OPINION AND ORDER

Plaintiff underwent surgery.  The doctor prescribed oxycodone for pain.  On April 4, 2005, Plaintiff submitted a Health Care Request to PHS in which he asserted he had received inadequate pain support because PHS had doubled his Vicodin rather than giving him a Nubaine shot.  He also submitted a Health Care Request on April 5, 2005, in which he asked for more pillows to elevate his head, inquired when his head was going to be cleaned, and complained that he did not want and did not request more pain medication.

On April 11, 2005, PHS staff responded to Plaintiff's April 4, 2005, Health Care Request regarding pain medication and noted PHS had not received orders from a doctor to increase Plaintiff's pain medication.  In fact, PHS staff asserted Dr. Scott reduced Plaintiff's medication, and PHS staff followed the doctor's orders.  Defendant Dr. Carnevale saw Plaintiff on April 28, 2005, and he addressed Plaintiff's pain-medication issues.

Plaintiff filed a number of grievance appeals with Defendant Jay Kravitz, M.D., Health Officer for Washington County, relating to Plaintiff's assertion that he received inadequate medical care from April 1 through April 5, 2005.  On June 6, 2005, Dr. Kravitz responded to Plaintiff's appeals and concluded Plaintiff was receiving "appropriate and satisfactory care."

On August 28, 2006, Plaintiff filed an action in this Court

pursuant to 42 U.S.C. § 1983 in which he alleged Washington
County, Washington County Sheriff, Deputy Pope, and Deputy Lyons
violated his right to due process because they failed to provide
him with a safe environment free from assault by other inmates.
He also alleged the medical staff at Washington County Jail
violated his right to be free from cruel and unusual punishment
by their deliberate indifference to his serious medical needs.

On July 9, 2007, the Court issued an Opinion and Order in
which it dismissed Plaintiff's claims against Defendants
Dr. Kravitz and PHS without prejudice and granted Plaintiff leave
until August 9, 2007, to file an amended complaint to cure the
deficiencies noted in the Court's Opinion and Order.

On August 6, 2007, Plaintiff filed an Amended Complaint
pursuant to 42 U.S.C. § 1983 in which he alleges (1) Washington
County, Washington County Sheriff, Sgt. Diamond, Deputy Pope, and
Deputy Lyons (County Defendants) violated his right to due
process because they failed to provide him with a safe
environment free from assault by other inmates; (2) Dr. Kravitz
violated Plaintiff's rights under the Eighth Amendment to the
United States Constitution when he was deliberately indifferent
to Plaintiff's serious medical needs by failing to respond to
Plaintiff's grievances; and (3) Defendants PHS, Nowack, Nurse
Doe, and Dr. Carnevale (Private Defendants) also violated his
rights under the Eighth Amendment to the United States

6 - OPINION AND ORDER

Constitution when they were deliberately indifferent to Plaintiff's serious medical needs.  Plaintiff seeks damages and a declaration that Defendants violated his rights under the United States Constitution.

On March 24, 2008, PHS filed a Motion for Summary Judgment.[1]

## STANDARDS

Federal Rule of Civil Procedure 56(c) authorizes summary judgment if no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law. The moving party must show the absence of an issue of material fact.  *Rivera v. Philip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005).  In response to a properly supported motion for summary judgment, the nonmoving party must go beyond the pleadings and show there is a genuine issue of material fact for trial. *Id*.

An issue of fact is genuine "'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002)(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  The court must draw all reasonable inferences in

---

[1] On January 24, 2008, the Court issued a Summary Judgment Advice Notice advising Plaintiff that if he did not submit evidence in opposition to any motion for summary judgment, judgment would be entered against him if it was appropriate.

favor of the nonmoving party. *Id*.  "Summary judgment cannot be granted where contrary inferences may be drawn from the evidence as to material issues." *Easter v. Am. W. Fin.*, 381 F.3d 948, 957 (9th Cir. 2004)(citing *Sherman Oaks Med. Arts Ctr., Ltd. v. Carpenters Local Union No. 1936,* 680 F.2d 594, 598 (9th Cir. 1982)).

A mere disagreement about a material issue of fact, however, does not preclude summary judgment. *Jackson v. Bank of Haw.*, 902 F.2d 1385, 1389 (9th Cir. 1990).  When the nonmoving party's claims are factually implausible, that party must "come forward with more persuasive evidence than otherwise would be necessary." *Wong v. Regents of Univ. of Cal.*, 379 F.3d 1097 (9th Cir. 2004), *as amended by* 410 F.3d 1052, 1055 (9th Cir. 2005) (citing *Blue Ridge Ins. Co. v. Stanewich*, 142 F.3d 1145, 1149 (9th Cir. 1998)).

The substantive law governing a claim or a defense determines whether a fact is material. *Miller v. Glenn Miller Prod., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).  If the resolution of a factual dispute would not affect the outcome of the claim, the court may grant summary judgment. *Id*.

## DISCUSSION

PHS moves for summary judgment on the ground that it is a private corporation and, therefore, cannot be held liable under

§ 1983 for the actions of its employees on the theory of *respondeat superior*.

## I.    Section 1983

Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any
> State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen
> of the United States or other person within the
> jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in equity,
> or other proper proceeding for redress . . . .

To establish a claim under § 1983, a plaintiff must initially allege "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a constitutional right." *L.W. v. Grubbs (Grubbs I),* 974 F.2d 119, 120 (9th Cir. 1992).  State officials or municipalities are liable for deprivations of life, liberty, or property that rise to the level of a "constitutional tort" under the Due Process Clause of the Fourteenth Amendment. *Johnson v. City of Seattle*, 474 F.3d 634, 638 (9th Cir. 2007). The Fourteenth Amendment does not require the state to protect individuals against the deprivations of life, liberty, or property by private actors. *Id.* at 195.

## II. Analysis

As noted, PHS asserts it cannot be held liable under § 1983

for the actions of its employees pursuant to *respondeat superior* because PHS is a private corporation.

**A.    No *respondeat superior* liability under § 1983**

The Ninth Circuit has held § 1983 does not impose liability on municipalities for the acts of their employees under a *respondeat superior* theory of liability. *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691-94 (1978)(A municipality "cannot be held liable solely because it employs a tortfeasor - or, in other words . . . [it] cannot be held liable under § 1983 on a *respondeat superior* theory.").

Although the Ninth Circuit has not addressed this issue, other federal courts of appeals have extended the *Monell* doctrine to private entities performing state functions. *See Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003); *Jackson v. Illinois Medi-Car Inc.*, 300 F.3d 760, 766 7th Cir. 2002); *Burke v. N. Dakota Dep't of Corr. & Rehab.*, 294 F.3d 1043, 1044 (8th Cir. 2002); *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 729 (4th Cir. 1999); *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992); *Rojas v. Alexander's Dep't Store*, 924 F.2d 406, 408-09 (2d Cir. 1990).

Although PHS is a private entity, it does not appear to contest that it is performing a state function. In any event, the Court concludes PHS has engaged in "state action" by providing prison medical care for purposes of § 1983 because it

10 - OPINION AND ORDER

is performing a function that is traditionally the prerogative of
the state and because PHS provided medical care "under the aegis
of governmental authority." *Bromfield v. McBurney*, No. C07-
5226RBL-KLS, 2008 WL 2746289, at *8 (W.D. Wash. July 8, 2008).
*See also Masse v. Corr. Corp. of Am.*, No. CV 08-0138-PHX-JAT
(JCG), 2008 WL 2789562, at *3 (D. Ariz. July 17, 2008)("A
privately owned corporation that operates prisons pursuant to
contract with a state performs a public function that is
traditionally the exclusive prerogative of the state.").

Accordingly, to the extent Plaintiff attempts to hold
PHS liable for the acts of its employees in providing medical
treatment to Plaintiff, the Court concludes PHS is not liable
under § 1983 on the basis of Plaintiff's *respondeat superior*
claims.

**B.    Official policy or custom**

The circumstances in which a municipality may be found
liable under § 1983 are "carefully circumscribed." *See Fuller v.
City of Oakland,* 47 F.3d 1522, 1534 (9th Cir. 1995).  One of the
ways in which an individual may assert a claim against a
municipal body under § 1983 is to assert (1) the plaintiff was
deprived of a constitutional right, (2) the municipality had a
policy or custom, (3) the policy or custom amounted to deliberate
indifference to the plaintiff's constitutional rights, and
(4) the policy or custom was the moving force behind the

constitutional violation.  *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001).

The Ninth Circuit has not addressed under what circumstances a private corporation performing a state function may be held liable under § 1983.  Other federal courts of appeals, however, have held a private corporation may be liable under § 1983 only when an official policy or custom of the corporation causes a deprivation of constitutional rights.  *See, e.g., Dubbs*, 336 F.3d at 1216; *Austin*, 195 F.3d at 727-28; *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993); *Iskander v. Village of Forest Park*, 690 F.2d 126, 128 (7th Cir. 1982).  Several federal district courts in the Ninth Circuit, including this Court, have reached the same conclusion.  *See, e.g., Sundquist v. Philp*, No. C06-3387 MMC(PR), 2008 WL 859452, at *14 (N.D. Cal. Mar. 28, 2008); *Nash v. Lewis*, No. 04-6291-PA, 2007 WL 2027283, at *1 (D. Or. July 6, 2007); *Rogers v. Phoenix Mem. Hosp.*, NO. CV07-379-PHX-DGC DKD, 2007 WL 1760756, at *2 (D. Ariz. June 18, 2007); *Martinez v. County of Kern*, CV F06-1827LJOTAG, 2007 WL 1079937, at *9 (E.D. Cal. Apr. 9, 2007); *Smith v. N. Las Vegas Police Dep't*, NO. 2:99 CV 1492 LDG LRL, 2007 WL 496818, at *3 n.3 (D. Nev. Feb. 12, 2007).  The Court finds the analysis in these cases to be persuasive.

Here Plaintiff does not identify an official policy or

12 - OPINION AND ORDER

custom of PHS that deprived Plaintiff of his constitutional rights.  The Court, therefore, concludes Plaintiff has not established on this record that PHS is liable under § 1983.  *See Masse v. Corr. Corp. of Am.*, 2008 WL 2789562, at *3 ("To state a claim under § 1983 against a private entity performing a traditional public function, . . . a plaintiff must allege facts to support that his constitutional rights were violated as a result of a policy, decision, or custom promulgated or endorsed by the private entity.")(citing *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997); *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996); *Wall v. Dion*, 257 F. Supp. 2d 316, 319 (D. Me. 2003); *Austin*, 195 F.3d at 727; *Rojas*, 924 F.2d at 408; *Lux by Lux v. Hansen*, 886 F.2d 1064, 1067 (8th Cir. 1989); *Iskander*, 690 F.2d at 128)).

Accordingly, the Court grants PHS's Motion for Summary Judgment.


## CONCLUSION

For these reasons, the Court **construes** Plaintiff's Motion (#109) to Deny Defendant's Motion for Summary Judgment as a Response to Defendant Prison Health Services' Motion for Summary Judgment (#100) and **GRANTS** the Motion (#100) for Summary Judgment

of Defendant Prison Health Services.

IT IS SO ORDERED.

DATED this 9th day of October, 2008.


/s/ Anna J. Brown
_____
ANNA J. BROWN
United States District Judge

14 - OPINION AND ORDER